

**SEALED**

**FILED**

7/2/2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By: _____CO_____
Deputy

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**Case No: SA:25-CR-00399-FB**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>V<br><br>**(1) JOSHUA ALLEN**<br>**(2) MICHAEL COX, and**<br>**(3) BROOKLYNN CHANDLER WILLY**<br><br>**Defendants** | **INDICTMENT**<br><br>**COUNT 1: 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud**<br>**COUNT 2: 18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering**<br>**COUNT 3: 18 U.S.C. § 1956(h), Conspiracy to Launder Monetary Instruments**<br>**COUNT 4: 15 U.S.C. §§ 78j(b) & 78ff; & 17 C.F.R. § 240.10b-5; & 18 U.S.C. § 2, Securities Fraud.**<br><br>**NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE** |

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant herein:

### PERSONS and ENTITIES

1.      Defendant **(1) JOSHUA ALLEN** ("**ALLEN**") was a Lubbock, Texas based owner of Allen Financial Agency ("AFA"), which offered investment services including so called "alternative investments." These alternative investments were advertised as investment opportunities outside of the stock market. During all times relevant to this Indictment, **ALLEN** was an investment adviser as defined by 15 U.S.C. § 80b-2(11).

1

2.      Defendant **(2) MICHAEL COX** ("**COX**") was a Lubbock, Texas based Senior Vice President of AFA.   During all times relevant to this Indictment, **COX** was an investment adviser as defined by 15 U.S.C. § 80b-2(11).

3.      Defendant, **(3) BROOKLYNN CHANDLER WILLY** ("**WILLY**") was a San Antonio, Texas based owner of a company named Queen B Advisors LLC d/b/a Texas Financial Advisory ("TFA") and was the owner and sole proprietor of Chandler Capital Holdings ("Chandler Capital").  Among other services, TFA purported to provide asset management and financial planning services. During all times relevant to this Indictment, **WILLY** was an investment adviser as defined by 15 U.S.C. § 80b-2(11).

4.      Ferrum Capital LLC ("Ferrum Capital") was an investment company based in Lubbock, Texas.  **COX** and **ALLEN** jointly owned and controlled Ferrum Capital.  **ALLEN**, **COX**, **WILLY**, and others solicited investment into Ferrum Capital from primarily Texas residents.

5.      Ferrum II LLC ("Ferrum II") was an investment company based in Lubbock, Texas.  **COX** and **ALLEN** jointly owned and controlled Ferrum II.  **ALLEN** and **COX** solicited investment into Ferrum II.

6.      Ferrum III LLC ("Ferrum III") was an investment company based in Lubbock, Texas.  **COX** and **ALLEN** jointly owned and controlled Ferrum III.  **ALLEN**, **COX**, and others solicited investment into Ferrum III.  Investors were told their funds would be used for the purchase of life insurance settlements.  **COX** and **ALLEN** used money from Ferrum Capital and Ferrum IV to fund premium payments from Ferrum III.

2

7.      Ferrum IV LLC ("Ferrum IV") was an investment company based in Lubbock, Texas.  **COX** and **ALLEN** jointly owned and controlled Ferrum IV.  **ALLEN**, **COX**, **WILLY**, and others solicited investment into Ferrum IV from primarily Texas residents.

## DEFENDANTS' FRAUD SCHEME

8.      **ALLEN**, **COX**, and **WILLY** used Ferrum Capital, Ferrum II, Ferrum III, and Ferrum IV (collectively "Ferrum Entities") to steal millions of dollars from hundreds of victims. **ALLEN** and **COX** owned and controlled the Ferrum Entities.  **ALLEN**, **COX**, and **WILLY** convinced individuals throughout Texas and the United States to invest in the Ferrum Entities. **ALLEN**, **COX**, **WILLY**, and other acting at their direction, lied and misled investors concerning the nature of the investments into the Ferrum Entities, lied about their high commissions, lied and misled about the collateral securing the investments, and lied and misled about the security of the investments.  **ALLEN**, **COX**, and **WILLY** routinely told investors their money was safe, secure, and collateralized.  In truth, much of the victims' money was never invested but went to the benefit of **ALLEN**, **COX**, and **WILLY,** or paid to other investors. **ALLEN** even told one victim it would take "Jesus coming back" for there to be a problem with his investment into Ferrum Capital.  Even when investors' funds were used for actual investments, those investments were speculative and not fully secured.  **ALLEN**, **COX**, **WILLY**, and others collectively made millions of dollars from investors' funds while most investors lost some or all of their investment into the Ferrum Entities.

## INVESTMENT INTO FERRUM CAPITAL

9.      The investments into Ferrum Capital were generally done through contracts between an investor and Ferrum Capital in which the investor agreed to lend money to Ferrum Capital for the purpose of Ferrum Capital lending that money (alone or in aggregate with other

investors) to an Austin, Texas-based affiliated company ("Debt Buying Company") for the supposed purchase of "bad debt," meaning that Debt Buying Company was purchasing the right to try to collect on a loan or debt that the original lender (owner of the debt) had been unable or unwilling to collect.  Under the general investment structure described to investors, those distressed assets would be purchased at a reduced amount by Debt Buying Company, and then either resold or redeemed for a profit by Debt Buying Company, which would then repay the principal and interest via Ferrum Capital.  These investments are securities in the form of investment contracts because the investors invested money in a common enterprise and were led to expect profits solely from the efforts of others.  **ALLEN**, **COX**, and **WILLY** mislead investors regarding their commissions, the security of the investment, and the nature of the investment.

10.    Investments in Ferrum Capital began in December 2017 and were done through a four-year note with either 8% interest paid quarterly or 10% annual interest paid at the end of the four-year term.  As such, investors were promised they could redeem their principal and, if applicable, accrued interest at the end of the four-year term.  From 2018-2022, Ferrum Capital was primarily receiving money from investors as redemptions had not begun.  Generally, Ferrum Capital would take at least 10.75% of investor funds as "commissions" and send the remaining investor money to the Debt Buying Company.  In 2022, investors began to redeem their notes. To pay for these redemptions, **ALLEN**, **COX**, and **WILLY** solicited new investors with promises their money would be sent to the Debt Buying Company for the purchase of bad debt. Instead, beginning in March 2022 until August of 2023, new investor funds were used for the benefit of **ALLEN**, **COX**, and **WILLY** (such as to pay commissions) and to pay the earlier investors who were redeeming their earlier notes.  **ALLEN**, **COX**, and **WILLY** did not tell

investors their money was not being invested but was being used to pay earlier investors. Hundreds of victims invested approximately $67 million into Ferrum Capital. **ALLEN**, **COX**, **WILLY**, and others affiliated with them collectively made millions of dollars while most of the investors lost some or all of their investment.

## INVESTMENT INTO FERRUM II

11.    **ALLEN** and **COX** owned and controlled Ferrum II. **ALLEN** and **COX** solicited and convinced investors to invest into Ferrum II with claims their money would be invested into secure investments. **ALLEN** and **COX** lied, and the money was never invested. **ALLEN** and **COX** used the investor's money to pay themselves, other Ferrum Entities, and other investors. Approximately thirteen investors invested directly into Ferrum II, and each one lost some or all their investment.

## INVESTMENT INTO FERRUM IV

12.    **ALLEN** and **COX** owned and controlled Ferrum IV, and they, along with **WILLY** and others, solicited investors into Ferrum IV. In 2019, Ferrum IV and another investment entity (hereinafter "RPF") entered into a joint venture whereby Ferrum IV agreed to provide RPF with $3.1 million dollars to invest with a promise of a 20% return. **ALLEN**, **COX**, **WILLY**, and others solicited a first round of investment into Ferrum IV (to raise the $3.1 million dollars) and promised investors a 12% return on a one-year note. After raising the initial investment amount, **ALLEN** and **COX** sent that investment to be used by RPF, and it was never returned. **ALLEN** and **COX** then decided to solicit new investment and used that money to, among other things, pay back the original investors. Beginning in 2020, **ALLEN**, **COX**, and **WILLY** raised a second round of investment into Ferrum IV. These second round of investors were told their investments were safe and secure but were given various explanations about the

actual investment.  The second round of investment into Ferrum IV was used to pay **ALLEN**, **COX**, **WILLY**, and others (or otherwise for their benefit), used to pay other Ferrum Entities, and used to pay the original investors into Ferrum IV.  Approximately $926,000 of investor funds were funneled to **WILLY** through a third-party to conceal the source of the funds.  The second round of investors lost most or all of their investment while **ALLEN**, **COX**, **WILLY,** and others made millions collectively**.**

13.    The allegations contained in the General Allegations (paragraphs above) are incorporated in each and every Count of this Indictment.

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**
**(18 U.S.C. §§1349, and 1343)**

14.    Count One incorporates by reference, as if fully set forth herein, each and every paragraph of this Indictment.

15.    Beginning on or about November 1, 2017, and continuing until on or about December 10, 2024, in the Western District of Texas, the Northern District of Texas, and elsewhere, the Defendants,

**(1) JOSHUA ALLEN,**
**(2) MICHAEL COX, and**
**(3) BROOKLYNN CHANDLER WILLY**

did knowingly combine, conspire, confederate, and agree together with others, both known and unknown to the Grand Jury, to use interstate wire transmissions for the purpose of carrying out a scheme and artifice to defraud and to obtain money and property by means of materially false and

fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

16.     The object of the conspiracy was to enrich the conspirators by inducing individuals to invest money into the Ferrum Entities by providing false and misleading information and omitting material facts regarding their investments.

All in violation of Title 18, United States Code, Sections 1343 and 1349.

## COUNT TWO
### (Conspiracy to Commit Money Laundering)
### (18 U.S.C. § 1956(h))

17.     Count Two incorporates by reference, as if fully set forth herein, each and every paragraph of this Indictment.

18.     Beginning on or about November 1, 2017, and continuing until on or about December 10, 2024, in the Western District of Texas, and elsewhere, the Defendants

**(1) JOSHUA ALLEN,**
**(2) MICHAEL COX, and**
**(3) BROOKLYNN CHANDLER WILLY,**

did knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit: Wire Fraud in violation of 18 U.S.C. §1343, and that while

conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE
### (Conspiracy to Launder Monetary Instruments)
### (18 U.S.C. §§1956(h) & 1957)

19.     Count Three incorporates by reference, as if fully set forth herein, each and every paragraph of this Indictment.

20.     Beginning on or about November 1, 2017, and continuing until on or about December 10, 2024, in the Western District of Texas, and elsewhere, the Defendants

**(1) JOSHUA ALLEN,**
**(2) MICHAEL COX, and**
**(3) BROOKLYNN CHANDLER WILLY,**

did intentionally and knowingly combine, conspire, confederate, and agree together and with others known and unknown to the Grand Jury, to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, to wit: Wire Fraud in violation of 18 U.S.C. §1343, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT FOUR
### (Securities Fraud)
### (15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, &18 U.S.C. § 2)

21.     Count Four incorporates by reference, as if fully set forth herein, each and every paragraph of this Indictment.

22.     Investments in Ferrum Capital were securities in the form of investment contracts,

as defined by the securities laws of the United States because the investors invested money in a

common enterprise and were led to expect profits solely from the efforts of others.

23.    From on or about November 1, 2017, to on or about December 10, 2024, in the

Western District of Texas and elsewhere, the Defendants

**(1) JOSHUA ALLEN,**
**(2) MICHAEL COX, and**
**(3) BROOKLYNN CHANDLER WILLY,**

willfully, knowingly, and with intent to defraud, by use of the instrumentalities of interstate

commerce, directly and indirectly, in connection with a security, to wit a sale of investment into

Ferrum Capital, did commit or cause to be committed the actions described below:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts and omitted to state material facts
that were necessary in order to make statements that were made not
misleading in light of the circumstances under which the statements were
made; and

(c)    engaged in acts, practices and courses of business that operated and would
operate as a fraud and deceit on a person,

in violation of Title 17, Code of Federal Regulations, Section 240.10b-5.

All in violation of 15 U.S.C. §§ 78j(b) & 78ff ;17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2.

**NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE**
**[*See* Fed. R. Crim. P. 32.2]**

**I.**
**Conspiracy to Commit Wire Fraud Violations and Forfeiture Statutes**
**[Title 18 U.S.C. §§ 1349, 1343 subject to forfeiture pursuant to Title 18 U.S.C. §**
**981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the criminal violations set forth in Count One, the United States of America

gives notice to the Defendants of its intent to seek the forfeiture of certain property upon conviction

pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal

forfeiture by Title 28 U.S.C. § 2461(c), which states:

> **Title 18 U.S.C. § 981.  Civil Forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title.

> **Title 28 U.S.C. § 2461.**
> **(c)**  If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure . . ..

## II.
## Conspiracy to Commit Money Laundering Violations and Forfeiture Statutes
### [Title 18 U.S.C. §§ 1956(h), 1957 subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the criminal violations set forth in Counts Two and Three, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of certain property upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982.  Criminal forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957 . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

## III.
## Securities Fraud Violations and Forfeiture Statutes
### [Title 15 U.S.C. §§ 78ff & 78j(b); subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the criminal violations set forth in Count Four, the United States gives notice to Defendants of its intent to seek the forfeiture of property upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal

forfeiture by Title 28 U.S.C. § 2461(c), which states:

> **Title 18 U.S.C. § 981.  Civil Forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . .  any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Securities Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title.

> **Title 28 U.S.C. § 2461.**
> **(c)** If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure . . ..

This Notice of Demand for Forfeiture includes, but is not limited to, the property described below.

## IV.
## Money Judgment

**Money Judgment**: a sum of money which represents the value of the property constituting or derived from proceeds traceable to the violations herein and/or the property involved in or any property traceable to such property for violations herein, which the Defendants obtained directly or indirectly, as a result of the violations set forth above for which each Defendant is solely liable.

## V.
## Substitute Property

If any property subject to forfeiture for the violations set forth above, as a result of any act

or omission of the Defendants:

    a.  cannot be located upon the exercise of due diligence;
    b.  has been transferred or sold to, or deposited with, a third party;
    c.  has been placed beyond the jurisdiction of the court;
    d.  has been substantially diminished in value; or
    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the

value of the money judgment, as substitute property, pursuant to Title 21 U.S.C. § 853(p) and

Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL



FOREPERSON OF THE GRAND JURY


JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

BY: _____
For JOSEPH E. BLACKWELL
Assistant United States Attorney

BY: _____
For KELLY G. STEPHENSON
Assistant United States Attorney